IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | §   Case No. SA-21-CR-00404-JKP |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| MIGUEL GUTIERREZ, | § |
| | § |
| Defendant. | § |
| | § |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through the United States Attorney for the Western District of Texas, and the undersigned Assistant United States Attorney, files this sentencing memorandum for defendant Miguel Gutierrez. The United States previously filed a sentencing memorandum for co-defendant Hector Barreto. Dkt #193. The United States incorporates that memorandum into this one because Barreto and Gutierrez committed their crimes together thus those crimes factually overlap.

**INTRODUCTION**

Miguel Gutierrez is a smart and talented businessman who chose to use his talents to steal money donated to charity. Gutierrez solicited millions of dollars in donations from Dr. George Rapier into two non-profits, the Latino Coalition Foundation ("LCF") and the Hispanic Business Roundtable Institute ("HBRI"). Gutierrez and Barreto used their operational control over those entities to steal money Dr. Rapier intended for charity (LCF) and political advocacy (HBRI). Gutierrez also filed false tax returns because he hid this money (and the taxes he owed) from the IRS. To his credit, Gutierrez pled guilty and agreed to cooperate in the prosecution of Barreto. For this cooperation, the United States agreed as part of the plea agreement to make a non-binding

sentencing recommendation of a term of imprisonment of twelve months and one day. This recommendation was made in lieu of filing a motion for downward departure under U.S.S.G. §5K1.1.

For his substantial crimes, Gutierrez should be sentenced to imprisonment. Neither he nor Barreto should be sentenced to probation or some other non-custodial sentence (such as house arrest). However, pursuant to the plea agreement, the United States recommends Gutierrez be sentenced to twelve months and one day imprisonment. The United States also asserts Gutierrez should be punished with a $250,000 fine and full restitution as set forth in the plea agreement.

## FACTUAL SUMMARY

Dr. George Rapier is the founder of WellMed--a large and successful healthcare company which operates primarily in Texas and Florida. Gutierrez worked for Dr. Rapier and WellMed since approximately 2009. *See* Exhibit 1: FBI 302 10/9/19 interview of Dr. George Rapier. Through his work, Dr. Rapier began to trust and rely upon Gutierrez. Gutierrez solicited Dr. Rapier to make charitable donations to LCF and personal donations to HBRI. Dr. Rapier trusted in Gutierrez and Barreto and donated based upon what he thought was the mission of LCF. Dr. Rapier made 10 separate donations to LCF totaling $2.35 million dollars. Dr. Rapier's donations came from other charitable entities (such as the Rapier Family Foundation) which Dr. Rapier funded. PSR ¶10. Dr. Rapier made two donations to HBRI totaling $1.6 million dollars. This money came from his own personal money (no tax deduction taken) and was intended to be used for political advocacy. *See* Exhibit 1 at 3.

Throughout the entire time of the donations, Gutierrez was being well paid by WellMed including significant bonuses. Because of this Dr. Rapier did not authorize any separate compensation to Gutierrez from donations he made to LCF or HBRI. *See* Exhibit 1 at 4. Dr.

Rapier stated to federal agents he "would not have given them (Gutierrez and Barreto) a nickel" if he had known it was going to them personally. Id. Dr. Rapier assumed Gutierrez was being paid "completely and adequately" by WellMed and had no idea Gutierrez and Barreto were paying themselves from his donations. Exhibit 2: 11/20/20 302 interview of Dr. Rapier at 1.

Once Gutierrez used his relationship with Dr. Rapier to get the donations, Gutierrez and Barreto proceeded to steal those donations for themselves over several years. Gutierrez and Barreto paid themselves hundreds of thousands of dollars from the donations—either directly or funneled through third parties. Not content with the theft of funds, Gutierrez and Barreto used LCF's and HBRI's credit cards for expensive meals, vacations, personal items (including family Christmas presents), and to support their private businesses. Gutierrez and Barreto made payments to family members, business associates, spouses, and friends. At times, Gutierrez would double dip—getting reimbursed from WellMed for a hotel stay paid for by LCF or HBRI.

Gutierrez's theft began from the very start. Dr. Rapier's first charitable donation to LCF was on April 9, 2013, for $50,000. This donation was meant to help those in need. Instead, two days later, Gutierrez sent $30,000 of that donation to his mother who then sent a significant portion back to Gutierrez and his wife. *See* Exhibit 3 (trial exhibit 405).

There can be no question that Gutierrez and Barreto knew what they were doing was theft. Gutierrez used sophisticated means of funneling the charitable donations to himself and Barreto through payments to third parties and creation of false invoices to make those payments appear legitimate. One of those third parties was a local attorney named Brent De La Paz who Gutierrez recruited into the scheme. In interviews with federal agents, De La Paz recalled using charitable funds from LCF to pay for Barreto's and Gutierrez's private business ventures in El Salvador and

Mexico or luxuries such as Gutierrez's country club dues. *See* Exhibit 4: 10/31/22 FBI 302 interview of De La Paz at 2.

Gutierrez and Barreto would often text back and forth and celebrate their success of getting money from Dr. Rapier including celebrating a new Dr. Rapier donation by exclaiming "the Eagle has landed!". After convincing Dr. Rapier to donate $1.1 million dollars to HBRI, Gutierrez (in grey) and Barreto (in green) engaged in the follow text communication:



Exhibit 5 at 110-111 (trial exhibit 8). When even more money came into HBRI, Barreto and Gutierrez again celebrated the eagle landing again.

4



Id., at 113-114.

Gutierrez and Barreto text each other to show how they were using Dr. Rapier's donation to live their best lives. Some examples include Gutierrez using the LCF credit card to pay for a hunting trip in Colorado.





Exhibit 5 at 115, 118, and 119 (trial exhibit 8).

Gutierrez put a flight to San Juan on HBRI's credit card and made sure Barreto knew it was for vacation,



Id., at 136-137.

Barreto, Gutierrez and their spouses took an expensive trip to Italy and Israel which was paid for by Dr. Rapier's donations.



6



Id., at 192-198.

Gutierrez and his spouse took an expensive cruise to Alaska paid for by Dr. Rapier's charitable donations to LCF.



7



Id., at 80.

During the course of the investigation, the United States obtained significant communications between Gutierrez and Barreto through text and email. Despite thousands of communications, the United States has been unable to locate a single text or email in which either Barreto or Gutierrez express any remorse or concerns for using charitable funds for their own greed. Instead, as demonstrated above, Gutierrez and Barreto would frequently revel in using these donations for their own enjoyment. Gutierrez saw Dr. Rapier as a mark and drained millions from Dr. Rapier under the guise that money would be used for charity. The millions of dollars Dr. Rapier intended for charity could have been used to impact and improve so many lives of those less fortunate. Instead, Gutierrez and Barreto, both already wealthy in their own right, chose to steal these donations because their greed and their belief no one would ever know.

## GOVERNMENTS' SENTENCING RECOMMENDATION

The United States entered into a favorable plea agreement with the Defendant which considered his cooperation against Barreto in recommending a sentence of twelve months and one day imprisonment. The United States request this Court to follow that recommendation and sentence Gutierrez accordingly. Gutierrez should also be sentenced to a $250,000 fine. A maximum fine will serve to both punish Gutierrez but also divest him of some of the money he stole from LCF and HBRI which are not captured by restitutions amounts set forth in the Presentence report.

## **CONCLUSION**

Gutierrez chose to steal charitable funds intended by Dr. Rapier to help those less fortunate time and time again. This conduct occurred over years and began within 2 days of Dr. Rapier's first donation to LCF. The United States entered into an exceptionally favorable plea agreement with Gutierrez because of his cooperation. The recommended sentence in the plea agreement is significantly below the guideline range of 37 to 46 months as set forth in PSR ¶ 81. A sentence of twelve months and one day imprisonment, a $250,000 fine and restitution as set forth in the PSR would be a substantial reward for Gutierrez's cooperation while also appropriately holding him accountable for his crimes.

Dated this the 8th day of January, 2024.

        Respectfully submitted,

        JAIME ESPARZA
        UNITED STATES ATTORNEY

BY:    \_\_\_/s/Joseph E. Blackwell_____
        JOSEPH E. BLACKWELL
        Assistant U.S. Attorney
        Texas Bar # 24045504
        601 NW Loop 410, Suite 600
        San Antonio, Texas 78216
        (210) 384-7350
        Joseph.Blackwell@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of January, 2024, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System which will transmit notification of such filing to the Counsel of Record in this matter:

        \_\_\_/s/Joseph E. Blackwell_____
        JOSEPH E. BLACKWELL
        Assistant U.S. Attorney